IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WENDY REYES | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil No. **20-3565 PJM** |
| **BOARD OF EDUCATION FOR PRINCE** | * |
| **GEORGE'S COUNTY PUBLIC** | * |
| **SCHOOLS**, *et al.*, | * |
| | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Wendy Reyes has filed a Motion requesting that the Court award her attorney's fees and costs pursuant to the fee-shifting provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(3) (2004). She requests that the Court award her $269,054.80, consisting of: (i) attorney's fees and costs in the amount of $116,252.50, allegedly incurred litigating this action at the administrative level, (ii) attorney's fees and costs in the amount of $152,802.30, allegedly incurred litigating her appeal of the decision of the Administrative Law Judge (ALJ) to this Court, and (iii) the costs and expenses incurred litigating this motion, to be determined. The Motion for Attorney's Fees is **GRANTED IN PART and DENIED IN PART**. For the following reasons, the Court awards Plaintiff a total of $80,000 in Attorney's Fees and Costs.

### I. BACKGROUND

On March 24, 2020, Plaintiff filed an Administrative Due Process Complaint with the Maryland Office of Administrative Hearings (OAH), requesting a hearing to review the decision of the Prince George's County Public Schools' (PGCPS) with respect to the identification,

evaluation, or placement of Plaintiff's daughter A.C. pursuant to the IDEA, beginning when A.C. was nine years old. The Complaint covered a portion of the 2017-2018 school year, the entire 2018-2019 school year, and the entire 2019-2020 school year. ALJ Decision at 1[1]. The Due Process Complaint alleged that PGCPS had denied A.C. a FAPE (Free Appropriate Public Education) in six ways.

The due process hearing was held virtually because of the Coronavirus pandemic, over the course of eleven days from July 6 to 22, 2020, before ALJ Jocelyn Williams. ECF No. 1. On August 18, 2020, ALJ Williams issued her 78-page decision, finding for Prince George's County with respect to the great majority of Plaintiff's claims. Plaintiff did, however, prevail before the ALJ on her claim that PGCPS denied A.C. a FAPE as a result of PGCPS's failure to provide direct speech language services in A.C.'s January 31, 2018 and January 24, 2019 IEPs, and its failure to draft goals to address A.C.'s deficits in receptive and expressive language in the January 14, 2020 IEP. ALJ Decision at 52. Plaintiff also prevailed on her claim regarding the failure of PGCPS to convene IEP meetings following the April 20, 2018 and June 20, 2018 Progress Reports that indicated A.C. was not making sufficient progress in her written expression, math calculation, and reading phonics goals. ALJ Decision at 54. As a remedy for the inappropriate IEPs, the ALJ awarded A.C. 52 hours of speech-language services. ALJ Decision at 72. The ALJ, however, characterized PGCPS's failure to convene IEP meetings following A.C.'s poor Progress Reports

---

[1] As with the Court's Memorandum Opinion dated March 22, 2022 deciding the merits of Plaintiff's appeal, the Court draws its facts from the ALJ's Decision, A.C. v. Prince George's County Public Schools, MSDE-PGEO-OT-20-08662 (Aug. 18, 2020) (hereinafter, "ALJ Decision"), Plaintiff's Complaint and exhibits, ECF No. 1, as well as facts set forth in the parties' several briefings. Although the parties did not agree to stipulated facts at the administrative hearing, and did not submit stipulated exhibits, a significant number of identical facts were present in the exhibits of both Plaintiff and Defendants.

as a "procedural error" for which no remedy was awarded, since A.C. had subsequently made sufficient progress towards her goals. ALJ Decision at 54-55.

On December 9, 2020, Plaintiff filed her Complaint in this Court, appealing the decision of the ALJ. ECF No. 1. She requested judgment in her favor on all counts of her Complaint; a declaratory judgment that the ALJ's Decision contained significant mistakes of fact and law rendering it totally erroneous; a declaratory judgment to the effect that the ALJ committed serious procedural errors; a declaratory judgment that PGCPS denied A.C. a FAPE on the ground of all six alleged failures; an order requiring PGCPS to provide compensatory education, non-public placement, and amendment of A.C.'s educational records; and an order for attorney's fees. ECF No. 1 at 19-20. On Cross-Motions for Summary Judgment, as indicated, the Court granted Plaintiff's claims in part and denied them in part. The Court granted Plaintiff's Motion with respect to the ALJ's decision not to provide a remedy for PGCPS' failure to convene IEP meetings for A.C. in April and June of 2018 and for PGCPS' failure to include direct OT services for A.C. in the 2019 IEP. The Court deferred ruling on Plaintiff's request for attorney's fees at the summary judgment phase of the case, giving the parties time to file appropriate supplemental briefing on the issue. They have now done so.

As indicated, Plaintiff seeks $269,054.80 in attorney's fees and costs consisting of (i) attorney's fees and costs in the amount of $116,252.50, allegedly incurred litigating this action at the administrative level, (ii) attorney's fees and costs in the amount of $152,802.30, allegedly incurred litigating her appeal of the Administrative Law Judge's decision before this Court, and (iii) the costs and expenses incurred litigating Plaintiff's Motion for Attorney's fees, to be determined.

## II. STANDARD OF REVIEW

The IDEA provides that the "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). A litigant is a prevailing party for purposes of an attorney's fees award "if they succeed on any <u>significant</u> issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (Emphasis added). "After a district court has determined that a litigant is a prevailing party for purposes of an attorney's fees award, the district court must assess an appropriate fee by calculating the 'number of hours <u>reasonably</u> expended on the litigation multiplied by a reasonable hourly rate.'" *Bd. of Educ. of Frederick Cty. v. I.S. ex rel. Summers*, 358 F. Supp. 2d 462, 465 (D. Md. 2005), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (Emphasis Added). However, "[t]here is no precise rule or formula" for determining the amount of attorneys' fees, and district courts "necessarily [have] discretion" in such matters. *In J.D. ex rel. Davis v. Kanawha Cty. Bd. of Education* 571 F.3d 381 (4th Cir. 2009), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

## III. DISCUSSION

Defendants do not contest that Plaintiff achieved prevailing party status as to a limited portion of her suit. ECF No. 51. They argue, however, that since Plaintiff was only the prevailing party as to certain claims, she should not be awarded the full attorney's fees she seeks. The Court agrees. Even when a party is deemed the prevailing party, under the IDEA there is a critical limiting principle when it comes to awarding attorney's fees and costs.

"When an unsuccessful claim is distinct in all respects from a successful claim, the time spent by the party's attorney on the unsuccessful claim should not be included in an award for reasonable attorney's fees." *I.S. ex. Board of Educ. of Frederick County*, 358 F. Supp. 2d at 466, *citing Hensley*, 461 U.S. at 436 (Emphasis added). Thus, district courts may clearly adjust attorney's fees to the extent that a party is not 100 percent successful at the administrative hearing level. *See id. See also J.D. ex rel. Davis*, 571 F.3d at 387 (district court did not abuse its discretion in awarding limited attorney's fees that accounted for parent's limited success). The same, of course, would be true with respect to attorney time spent in connection with District Court and Court of Appeals proceedings, over and above the time spent at the administrative level. See ECF No. 37.

Plaintiff prevailed at the administrative level with respect to her claims that PGCPS failed to provide direct speech language services to A.C. in the January 31, 2018 and January 24, 2019 IEPs; failed to address A.C.'s deficits in receptive and expressive language in the January 14, 2020 IEP; and failed to hold IEP meetings to review and revise A.C.'s IEP to address lack of progress in 2018 and 2019. Before this Court, she prevailed with respect to the ALJ's failure to provide a remedy for PGCPS' failure to convene IEP meetings for A.C. in 2018 and PGCPS' failure to include direct OT services for A.C. in the 2019 IEP. Plaintiff was not the prevailing party, however, on the great majority of her multifarious claims at either the administrative level or before this Court. Her successes do entitle her to a number that accords with the extent to which she prevailed, but at the same time only to the extent that her activities may be deemed reasonable. That number, the Court finds, is substantially less than all the very substantial attorney time Plaintiff's counsel seeks to be compensated for.

In general, the Fourth Circuit has adopted a multi-factor test to determine a reasonable attorneys fee award, often called "Johnson factors."[2] *See A.D. v. AD ex rel. SD v. Bd. of Pub. Educ. of City of Asheville*, 99 F. Supp. 2d 683, 687 (W.D.N.C. 1999) (recognizing that the twelve factor test originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974) is "well settled law in the Fourth Circuit."); *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958 (4th Cir. 1990). The Supreme Court has suggested that in this complex analysis "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (Emphasis added).

Plaintiff's counsel breaks down her fees into three categories: Attendance at IEP meetings on behalf of Student -- $250/hour; Administrative Due Process litigation -- $450/hour; and Federal Court litigation -- $550/hour. See ECF No. 44, Exhibit 3, Affidavit of Kimm Massey, Esq. Defendants challenge these rates as out of step with Appendix B of this Court's local rules, which state that lawyers admitted to the bar for nine (9) to fourteen (14) years should be compensated at a rate of $225 to $350.00 per hour. As a starting point, but only as a starting point, the Court does not share the Defendants' concern over the level of Plaintiff's Counsel's claimed rates (though they do seem somewhat high). Plaintiff's counsel has been a member of the District of Columbia Bar since 1994, despite her more recent admission to the Maryland Bar in 2013. ECF No. 44, Exhibit 3, Affidavit of Kimm Massey, Esq. She has practiced special education law for a number

---

[2] Factors to consider in determining reasonable attorney fee include: (1) time and labor expended; (2) novelty and difficulty of questions raised; (3) skill required to properly perform legal services rendered; (4) attorney's opportunity costs in pressing instant litigation; (5) customary fee for like work; (6) attorney's expectations at outset of litigation; (7) time limitations imposed by client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation, and ability of attorney; (10) undesirability of case within legal community in which suit arose; (11) nature and length of professional relationship between attorney and client; and (12) attorney fee awards in similar cases

of years. ECF No. 53. According to another special education practitioner who has filed an affidavit on Counsel's behalf, "hourly rates of $450 at the administrative level and $550 at the federal court level are very reasonable and less than what [Affiant Attorney Wayne D. Steedman has] seen in other IDEA cases." *Id.* (Affidavit of Wayne D. Steedman at ¶ 14). Again, as a general proposition the Court is not put off by the hourly rates Plaintiff's counsel claims.

The more problematic aspect of Plaintiff's counsel's claimed fees is whether all her hours were in fact "reasonably" spent.[3] Allowing that Plaintiff's counsel in fact spent all the hours she asks to be compensated for, the Court finds – at least for purposes of determining a fee award under IDEA – that a fair number of these hours were not reasonably spent. Not only were some of counsel's hours inappropriately spent in both the administrative proceedings and before the Court; she has spent an inordinate amount of time writing about and trying to defend this inappropriate conduct in her briefs; indeed she now asks for compensation for the time she has spent briefing those very points.

But first the Court considers the time Plaintiff's counsel may appropriately be compensated for. In her Complaint heard by the ALJ, Plaintiffs sought a finding that PGCPS had denied A.C. a FAPE in six ways: (1) failing to provide appropriate IEPs on January 31, 2018, March 5, 2018, January 24, 2019, January 14, 2020, and amendments thereto; (2) failing to provide an appropriate placement/location of services in March 2020; (3) failing to provide an appropriate location of services school year 2017/18 dating back to March of 2018, school year 2018/19, and school year 2019/20; (4) failing to implement A.C.'s IEPs dated January 31, 2018,

---

[3] The Court passes over the question of the extent to which the claims Plaintiff prevailed on were "significant". Certainly, relative to the entire range of claims Plaintiff asserted in both the administrative and district court proceedings, they were not – as discussed in the text – as "significant" as the several claims she did not prevail on. Nonetheless the Court allows that, taken together, the claims Plaintiff prevailed on were of some "significance".

March 5, 2018, January 24, 2019, and January 14, 2020 and amendments; (5) failing to convene IEP meetings to review and revise A.C.'s IEPs to address her failure to make expected progress; and (6) failing to provide accurate quarterly IEP Progress Reports. She also requested a non-public placement for A.C. ALJ Decision at 3-4.

Of these, Plaintiff only prevailed on her claim that PGCPS failed to provide direct speech language services for A.C. in the January 31, 2018 and January 24, 2019 IEPs; failed to draft goals to address A.C.'s deficits in receptive and expressive language in the January 14, 2020 IEP; and failed to convene IEP meetings following the April 20, 2018 and June 20, 2018 Progress Reports that indicated that A.C. was not making sufficient progress. ALJ Decision at 52-54. As such, Plaintiff was not the prevailing party as to most of her claims before the ALJ.

Still, the Court is obliged to consider the problematic conduct of Plaintiff's counsel throughout much of these proceedings. In her Summary Judgment motion before the Court, counsel spent considerable time personally attacking the ALJ (disdainfully), which in the end this Court found constituted "little more than disagreements with how the ALJ expressed her discretion." ECF No. 37. Plaintiff's counsel even went so far as to argue before the Court that the ALJ's decision was so "irregular" that it demonstrated that the ALJ was, in effect, completely "unqualified" to serve as a hearing officer, in consequence of which, according to counsel, none of the ALJ's findings should be accorded the usual presumptive validity. ECF No. 33. This argument was not only untrue and unjustified; it amounted to as far-fetched a claim about a judicial officer as this Court has seen in any IDEA case, indeed in any case, in all its years on the bench. So not only was the claim distinctly untrue and unjustified; it was unreasonable for counsel to have spent any time complaining about. More to the point, it is undeserving of any compensation.

Then, too, some of the more remarkable arguments made by Plaintiff's counsel before the Court pertained to allegedly continuing misconduct on the part of the defense counsel, who Plaintiff's counsel chastised at length for making objections to evidence or in serving subpoenas, and in general, for supposedly conducting himself overall in an uncivil manner. But, at a minimum, Plaintiff's counsel herself was at least as guilty as defense counsel in this respect. The Court repeats in a footnote below what it wrote in footnote 15 of its Memorandum Opinion, which emphatically captures this point.[4]

---

[4] Plaintiff cites to portions of the transcript in an effort to show that the ALJ failed to prevent defense counsel from, among other things, repeatedly objecting or adopting an uncivil tone. Pl.'s Reply 2-4. The record does show that defense counsel was out of line on more than one occasion and for that he certainly wins no praise. But the record also shows that Plaintiff's counsel acted similarly on more than one occasion and that the ALJ was obliged to take both counsel to task. Here are some examples:

ALJ: "Okay, okay, I'm sorry, we're not gonna go back and forth this is not the time for – excuse me, excuse me, excuse me Ms. Massey stop speaking, stop speaking. We're not gonna go back and forth and argue, we're not doing that." Tr. 415.

ALJ: "I think both of you need to stop editorializing and stick with the facts of this case so that we can move this case forward, lest eight or nine days turn into twelve, thirteen, fourteen, fifteen days which I do not want to do." Tr. 439.

ALJ: "But you are editorializing Mr. Krew. You are. So both of you are guilty of doing lots of different things that are inappropriate in this hearing." Tr. 471.

ALJ: "Ok, listen. I am not in the position to mediate a schoolyard fight. So each time someone says something that the other person doesn't like I can't continue to say, please don't do that, Ms. Massey. Please don't do that, Mr. Krew. I need for everyone to exercise professionalism and civility. I can't keep having the same conversation because we are getting nowhere." Tr. 500.

ALJ: "So I will say again that I am not going to tolerate this behavior from either of you. And so all of the back and forth and all of the bickering and all of the finger-pointing and all of the editorializing must stop, or we'll never get through this hearing. It won't happen." Tr. 665.

The main point is that the ALJ addressed with admirable restraint what she later characterized as the "quite childish behavior for two professionals who are representing parties in this case." Tr. 666. In the annals of courtroom remonstrance, the Court finds that the ALJ's responses were very much in the mainstream.

9

Then there was conduct of Plaintiff's counsel alone that was and continues to be concerning, specifically, for example, her lack of cooperation in accepting subpoenas from defense counsel prior to the hearing before the ALJ. Another footnote from the Court's Memorandum Opinion is repeated in full in a footnote below, which details this episode.[5]

---

[5] The actions of Plaintiff's counsel in this respect are concerning. The following timeline is relevant:

**June 15**: Date of Amended Pre-Hearing Report. Plaintiff's counsel does not give actual names of expert witnesses, identifying them only as "a speech and language expert," "an occupational therapist," and "a psychologist." *See* Amended Pre-Hearing Report at 4-5. Plaintiff's counsel did provide the name of Jessica Williams, who was offered as an expert in special education (ultimately she was not accepted as such by the ALJ). *See id.*; ALJ Decision at 4 n. 4.

**June 19**: Per the Amended Pre-Hearing Report, deadline to request OAH to issue subpoenas (which only OAH can do); Defense counsel submits subpoena requests to OAH. These subpoenas contain a deadline for production of documents of June 24. Defense counsel sends courtesy copies of subpoenas to Plaintiff's counsel. *See* Tr. At 337. This is all before the 5-day disclosure rule kicks in.

**June 24**: Deadline for subpoenaed individuals to produce documents set forth in the subpoenas (that have not yet been formally issued).

**June 26**: OAH issues the formal subpoenas.

**July 1**: 5-day disclosure deadline.

**July 2**: Plaintiff's counsel receives formal subpoenas, which state that documents were due June 24, which has already passed. 5-day disclosure deadline has also passed. Plaintiff's counsel does not transmit the subpoenas to Plaintiff's expert witnesses. *See* Tr. at 14 (ALJ Williams: Okay. Ms. Massey were the subpoenas that were served on you provided to your witnesses – your expert witnesses? Ms. Massey: No, they were not. But I did tell the witnesses about those subpoenas . . . at the time the subpoenas were received they were already outdated. In any event, everything that these witnesses have is in the Respondent's disclosures . . ."). The Court views Plaintiff's counsel's decision to disregard the subpoenas and not deliver them to her expert witnesses as totally inappropriate. Any decision as to the need to comply with the subpoenas was distinctly the office of ALJ, not Plaintiff's counsel.

**July 6**: First day of Hearing. Plaintiff's counsel objects to the subpoenas on the grounds that they were untimely, duplicative, and that it would be expensive to Plaintiff to have to compensate the experts for their time to respond. *See* Tr. at 14-26.

**July 7**: Plaintiff continues to object to the subpoenas as untimely. Plaintiff's counsel also objects to the subpoenas because one was addressed to "a psychologist" but delivered to Dr. Revel (at the direction of the ALJ during the prior hearing day), a speech pathologist (although, as explained at the hearing, in the body of the email from defense counsel, the individual was referred to as a "speech pathologist"). *See* Tr. at 232-237.

Finally, the Court is constrained to remark upon the conduct of Plaintiff's counsel when defense counsel requested the Court to accept a late-filed Memorandum in Opposition to Plaintiff's Motion for Consideration of Additional Evidence as timely filed, *nunc pro tunc*, on May 24, 2021 as opposed to its original due date of May 17, 2021. ECF No. 23. The Court, taking this to be a pro forma request, granted the Motion on May 26, 2021. ECF No. 25. That same day, Plaintiff's counsel filed a 12-page Motion asking the Court, in relevant part, to: (1) Accept Plaintiff's Motion for Reconsideration and Withdraw the Court's 5/26/21 Order; (2) Restore the Briefing Schedule Set by the Court for this Case on April 8, 2021; (3) Deny Defendants' Motion to Accept for Filing, *Nunc Pro Tunc*, Memorandum in Opposition to Plaintiff's Motion for Consideration of Additional Evidence, and; (4) Strike Defendants' Memorandum in Opposition to Plaintiff's Motion for Consideration of Additional Evidence. ECF No. 27. This dispute occasioned a phone conference with the Court, at which the Court denied Plaintiff's Motion in its entirety, finding this particular dustup unnecessary, and frankly, unreasonable on the part of Plaintiff's counsel. Accommodating opposing counsel who may need additional time to file a pleading in a case is something that ordinarily occurs as a matter of course and is almost always accomplished with a simple phone call, at least when no real prejudice to opposing counsel is involved. No such prejudice inhered in defense counsel's request for an extension of time here. Plaintiff's counsel seemed to be under the impression that

---

Over the continuing objection of Plaintiff's counsel, the ALJ meticulously inquires of each of the subpoenaed witnesses whether the witness in fact possessed a requested document and, if the answer was yes, the ALJ then ordered the witness to e-mail the document to defense counsel. *See, e.g.,* Tr. at 40-72 (Dr. Revel); 324-350 (Dr. Clarke); 356-392 (Jessica Williams). As a result of Plaintiff's counsel's resistance, an extended amount of time has to be spent simply procuring the documents. In the end, the requested documents are in fact largely duplicative of other evidence already in the hearing. Defense counsel obviously wanted to determine the basis, principally the documents, that were the source of the witnesses' opinions (such as IEPs), hardly a controversial tactic. Much hearing time could have been avoided if Plaintiff's counsel had been more co-operative.

11

there would be prejudice because granting more time to Plaintiff's counsel to file at the end of May might run the case into the school year beginning that September, which would not give the Court enough time to decide Plaintiff's appeal by then. But, of course, the filing of the Motion to Reconsider, etc. and the telephone conference with the Court that followed themselves took time. In any event, the Court advised both counsel during the telephone conference that it would not be able to digest the administrative record of the case, including the briefs and multiple exhibits presented at the summary judgment stage, then write a decision between June and September, particularly in view of its competing caseload. As it was, the Court's eventual 50-page Memorandum Opinion in this case did not issue until March 31, 2022.

The Court cannot discount with exact precision all those hours spent by Plaintiff's counsel in the needless and inappropriate pursuits just cited. But the Court is nevertheless satisfied that the unnecessary and unreasonable time spent by Plaintiff's counsel was considerable. Moreover, in her briefing before the Court, especially in her request for fees, Plaintiff's counsel has continued her personal attacks on both the ALJ and opposing counsel, going so far as to report that she investigated defense counsel's supposed behavior in other IDEA cases and his professional reputation in general, which led her to reach an overall extremely negative conclusion about defense counsel. Presumably, Plaintiff's counsel now seeks to be compensated for having done this investigating as well as for writing about it. These actions by Plaintiff's counsel, in the Court's view, were totally out-of-bounds for any attorney in any case. Litigation in any forum can be rough-and-tumble. Sometimes opposing counsel do not get along particularly well with one another. But such incompatibility should rarely, if ever, be the basis for an award of fees to the counsel who seeks to complain about it, especially where, as here, the

record is clear that the attorney seeking compensation gave at least as much as she got in her interaction with opposing counsel.

All this said, Plaintiff remains entitled to some reasonable amount of attorney's fees, even acknowledging the substantial hourly rates Plaintiff's counsel has argued to the Court. Considering all factors, the Court concludes that Plaintiff is due attorney's fees and costs in the amount of $80,000, approximately 30% of the $269,054.80 she seeks. This accords with Fourth Circuit precedent.

In *J.D. ex rel. Davis v. Kanawha Cty. Bd. of Education*, the Fourth Circuit reviewed a comparable inquiry into a claim for attorney's fees that the United States District Court for the Southern District of West Virginia had undertaken. 571 F.3d 381 (4th Cir. 2009). The district court was faced with a situation where the parents prevailed on several of their claims and "received some of the relief sought," but did not prevail on the most significant claim: whether the student's IEP was appropriate. *Id.* The district court adjusted the parents' award downwards to account for what it determined to be their limited success, awarding them $34,072 of the requested $112,292. *Id.* at 387. That was about 30% of the requested award. The Fourth Circuit affirmed the decision. *Id.*

The situation at bar is similar. How much should an attorney who has prevailed on a relatively limited number claims at both the administrative and district court levels be awarded? The Court follows the example of *In J.D. ex rel. Davis v. Kanawha Cty. Bd. of Education* and awards Plaintiff's counsel a portion of her requested costs: $80,000 of $269,054.80, here too some 30% of her total request. In the proceeding before the Court, Plaintiff sought a declaratory judgment that the ALJ Decision contained significant mistakes of fact and law rendering it erroneous; a declaratory judgment to the effect that the ALJ committed procedural errors; a

13

declaratory judgment that PGCPS denied A.C. a FAPE on the ground of all six alleged failures; an order requiring PGCPS to provide compensatory education, a non-public placement, and amendment of A.C.'s educational records; and an order for attorney's fees. ECF No. 1 at 19-20. Comparing the extraordinarily wide scope of these requests to the relatively limited success Plaintiff in fact achieved, the Court finds $80,000 to be an appropriate, even generous award.[6]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees is **GRANTED IN PART and DENIED IN PART**. A separate Order will **ISSUE**. The Court will **AWARD** Plaintiff $80,000 in attorney's fees and costs.

Date: January 25, 2023

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[6] This is not to say that what Plaintiff's attorney may have billed Plaintiff is per se unreasonable, a matter between Plaintiff and her counsel. For purposes of awarding attorney's fees and costs under the IDEA, $80,000 is the amount that the Court deems reasonable.

14